ADAMS DAIRY COMPANY, a Corporation, Respondent, v. DAIRY EM-
PLOYEES UNION, LOCAL 207, of INTERNATIONAL BROTHERHOOD of
TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMER-
ICA, OF AMERICAN FEDERATION OF LABOR; CLIFFORD A. POTEET;
and LEO W. BAKER, Appellants, No. 42610—250 S. W. (2d) 481.

Division Two, May 12, 1952.

Motion for Rehearing or to Transfer to Banc Overruled, July 14, 1952.

*Marcy K. Brown, Jr., Louis J. Pelofsky* and *Joseph N. Miniace*
for appellants.

183

*Harvey B. Burrus* and *Charles V. Garnett* for respondent.

**184**

WESTHUES, C.—Plaintiff Adams Dairy Company filed this suit against the defendant Union and its officers, Clifford A. Poteet and Leo W. Baker, to prevent a threatened strike and picketing at plaintiff's dairy plant located at Blue Springs, Jackson County, Missouri. The defendants filed a cross bill asking the court to enjoin plaintiff from violating a labor contract signed by the Union and plaintiff and for a mandatory injunction ordering plaintiff to carry out the terms of the contract and to reinstate union members in their positions under the terms of the contract. The trial court dismissed the cross bill and granted plaintiff the relief prayed for. From the judgment, the defendants appealed.

The defendants contend that the injunction granted in this case "Is Violative of Article I, Sections 8 and 29 of the Missouri Constitution and the 14th Amendment to the Constitution of the United States."

The evidence justifies the following statement of facts: Plaintiff is the operator of a large dairy employing 32 or 33 persons. It purchases milk from about 150 farmers owning approximately 3,000 cows. This milk is processed at the plant and plaintiff offers for sale at wholesale pasteurized, homogenized, and Grade A milk as well as ice cream and other dairy products. Prior to August, 1950, plaintiff delivered the greater portion of its milk to its customers by means of six trucks. The principal customers were chain and other grocery stores located in Johnson and Jackson Counties, Missouri, including Kansas City. The six truck drivers employed by plaintiff received pay on a com-

mission basis and were members of the defendant Union (Local 207). Plaintiff had signed a contract from year to year with this Union governing the employment and the working conditions of the employees. The contract in force in August, 1950, when the present controversy arose, was signed March 1, 1950. Plaintiff also sold milk at wholesale at its plant to persons who in their own trucks came to the plant daily, purchased quantities of milk, and resold it at various stores. These persons were not members of defendant Union. Plaintiff desired to discontinue delivering milk by truck and to sell the milk at the plant. This proposed change was discussed on at least two occasions when renewal of the labor contract was considered. Plaintiff desired to insert a provision in the contract expressly authorizing the change while the defendant Union proposed a clause expressly prohibiting such a change. The parties could not come to an agreement and neither clause was inserted in the contract.

In August, 1950, plaintiff discontinued delivering milk by truck and sold its trucks to individuals. Plaintiff entered into contracts with these purchasers of the trucks. Under these contracts the milk was sold at the plant to the owners of the trucks and they in turn resold it to the retailers. The operators of these trucks paid for the milk purchased on a weekly basis. When the defendants Poteet and Baker, officials of the Union, learned of the change, they instituted negotiations for a settlement of the question. A number of conferences were held. The defendants insisted plaintiff reemploy all truck drivers and reinstate them in their former positions. Plaintiff refused to do so. Defendants informed plaintiff that a picket would be placed at the plant and a strike called for Tuesday morning, September 5, 1950. On Monday, September 4, the present suit was filed. On the morning of September 5, the defendant Poteet was at plaintiff's plant and advised the employees to go to work.

Plaintiff contends that the above described change-over constituted a change in method of distribution and that the owners of the trucks are independent contractors. The defendant Union contends that the operators of the trucks are not independent contractors but are employees.

If the owners of these trucks are independent contractors within the meaning of the law, then, as we shall later demonstrate, plaintiff did not violate the labor contract with defendant Union. If, on the other hand, the change in method of disposing of the milk is a mere subterfuge and the operators of the trucks are in reality employees, then plaintiff has violated its contract with the Union. This is the principal question for decision on this appeal. Defendants so state in their brief. Note what they say: "In its final analysis the whole keystone of the arch that plaintiff has attempted to create depends upon the legal effect of plaintiff's so-called business contract with its so-called independent contractors. If this does not, as a

matter of law, fix the status of the signers thereof as independent contractors, the whole arch falls, the signers remain employees, and as such employees, replacing the union employees covered by the existing milk contract, no possible doubt can exist but that plaintiff has violated the contracts.''

The trial court held that the contracts entered into between plaintiff and the owners of the trucks made such owners independent contractors. A sample of the contracts was marked Exhibit 1. Note the finding made by the trial court: ''Under the law and the evidence the relationship created between plaintiff and the persons who signed contracts in the form of Exhibit 1, is that of vendor and vendee, and not that of employer and employee.'' We are of the opinion that the trial court was correct in so holding.

Defendants in their brief say that in deciding whether Exhibit 1 created the relationship of independent contractors, ''The ultimate test in determining this question is the right of control retained by plaintiff. A mere reading of this 'business contract' shows plaintiff has not changed its methods of delivery in any respect.'' It is true that the contracts placed many restrictions and imposed many duties upon the operators of the trucks. In considering the question we must keep in mind the product which is the subject matter of the contracts. In this case it is the delivery of milk and other dairy products. These products are very perishable and many precautions must be taken to prevent spoilage. To make such products salable and attractive to the general buying public, cleanliness must be maintained both in fact and in appearance. The trucks in which the products are hauled, the drivers, the deliverymen, the containers and all equipment used in handling the products must meet standards of cleanliness as well as presenting an appearance attractive to the general public.

The contracts provided that the persons purchasing and distributing plaintiff's products should at all times maintain standards of delivery which would comply with the regulations and policies of public health authorities; that trucks used should be maintained in a sanitary condition and the products be kept at proper temperatures and that no defective products should be delivered. To insure the latter provision, plaintiff agreed to repurchase all defective or damaged products at the same price that was paid for them. The distributors also agreed by the contracts to ''Maintain courteous and salesmanlike relations with customers.''

Plaintiff by the contracts was granted the right to allocate districts. The purpose for this as stated in the contracts was ''to insure competitive parity and safeguard the maintenance of high standard of service to present and prospective consumers of Second Party's products.'' It was further agreed ''That First Party * * * furnish Second Party with a list of customers to whom he sold dairy products

and to keep same up to date as changes are made, with a list of dairy products for delivery to First Party on the next succeeding business or delivery day.''

We see nothing in these requirements inconsistent with the theory that the distributors of the dairy products were independent contractors. Plaintiff employed a number of persons as sales promoters whose duties [484] were to maintain good will by calling on the various managers or owners of stores selling plaintiff's products at retail. This inured to the benefit of plaintiff as well as the distributors. The controls retained by plaintiff under the present contracts were no greater than necessary to insure safe and efficient delivery of plaintiff's products to the retailers. The duties imposed upon the distributors were a part of the contracts and in no way destroyed the relationship of independent contractors. Skidmore v. Haggard, 341 Mo. 837, 110 S.W. (2d) 726, l.c. 732, 733(8). Defendants cite Aubuchon v. Security Construction Co., Mo. App., 291 S.W. 187. That case is not in point. There the plaintiff was employed as a laborer. He was paid wages. He was under the jurisdiction of the defendant's foreman. No such situation exists in the present case. Plaintiff corporation in this case did not pay the operators of the trucks any wages. The operators purchased the dairy products and paid for them. They resold these products to retailers at prices fixed by them and not by plaintiff. The profit made by the operators depended upon the efficient manner in which they conducted the business.

The distributors under the contracts had the right to purchase a new truck whenever they saw fit. They could employ and discharge help at will and pay wages without any supervision by plaintiff. Another test may be applied to the relationship established by the contracts. Suppose one of these distributors collected for the milk he sold but failed to pay plaintiff. Would he be guilty of embezzlement? If he were an employee, he would be; if he were an independent contractor, he would not be. We do not hesitate to say that under the contracts in question, there would be no embezzlement if a distributor failed to pay the money he had collected. We rule the contracts established the relationship of independent contractors. 56 C.J.S. 55, Sec. 3(4); Party Cab Co. v. United States of America, 172 F. (2d) 87, 10 A.L.R. (2d) 358; Mountain Meadow Creameries v. Industrial Accident Commission, 76 P. (2d) 724, 25 Cal. App. (2d) 123. In the last case cited, the contract was very much like the contracts in the present case. The California court held the contract created the relationship of independent contractor and not employer and employee.

Was the dispute between the plaintiff and the defendants such as would authorize picketing of plaintiff's plant? We are of the opinion that it was not such a dispute. The clause of the labor

contract claimed to have been violated by the contracts entered into by plaintiff and the truck operators, reads as follows:

"ARTICLE 2. CO-OPERATION. Because it is in the interest of the Union and the Employer and also in the public interest to maintain harmony, good working conditions and the willing performance of duties by employees for which they are employed, it is mutually agreed any major changes in the present working conditions or rules must be mutually agreed to by the Union, employees, and Employer that this contract is written to accomplish such purpose."

The change-over from delivering milk by truck to the sale of the milk at plaintiff's plant to independent contractors was not a change "in the present working conditions or rules" as contemplated by the labor contract. The working conditions or rules governing the employees of plaintiff were not changed one iota. True, the change resulted in the discontinuance of six positions held by members of defendant Union; but that is not a change in working conditions. Thompson v. Boekhout, 273 N.Y. 390, 7 N.E. (2d) 674. If plaintiff had made a rule that the truck drivers would be compelled to deliver all of the milk, thereby necessitating more hours of labor than required by the labor contract, or if plaintiff had made a rule abolishing additional pay for overtime, or if a non-union truck driver had been employed, a clear violation of the labor contract would have resulted. The trial court held the change-over did not come within the terms of the labor contract. To constitute a labor dispute, there must be a controversy over conditions or terms of employment. In this case, plaintiff abandoned a part of its activities, that of delivering milk, which it had a right to do. It could have sold its entire business without consulting [485] the Union. It is much like a groceryman's stopping the practice of making deliveries to customers and doing a credit business and thereafter selling for cash. Such actions would not be subject matter of a labor dispute. The case of Paul v. Mencher, 169 Misc. 657, 7 N.Y.S. (2d) 821, was an injunction proceeding against a labor union. The court said, "There is no labor dispute as defined by statute between the parties hereto. It is the prerogative of any business man, with or without reason, to continue or discontinue in business, to change, alter or modify the nature of his business as he sees fit without necessity of explanation or excuse to anyone."

Since the action of plaintiff in discontinuing the delivery of milk was not within the scope of the labor contract, the Union was not authorized to picket or to strike and, it follows, the threatened strike and picketing were unlawful. Defendants concede that picketing or striking for an unlawful purpose may be prevented by injunction. Empire Storage and Ice Co. v. Giboney, 357 Mo. 671, 210 S.W. (2d) 55, 336 U.S. 490; 43 C.J.S. 686, Sec. 138 (a).

The defendants claim there was a legitimate dispute between plaintiff and the defendant Union because the services of the truck drivers, members of the Union, were dispensed with when the delivery of milk was discontinued. The record shows that a number of these truck drivers were given other positions at plaintiff's plant. The trial court found that these employees voluntarily accepted the new positions. They so testified and also stated they were entirely satisfied. One truck driver named Wiebusch had been discharged for cause on May 16, 1950. At the time the present dispute was pending, the case of Wiebusch was before the National Labor Relations Board. The trial court found that there was just cause for the discharge of Wiebusch. Another truck driver, Dallas Isenberg, who did not obtain other employment with plaintiff company testified for the defendants. The trial court found that Isenberg's termination of employment "was not the result of his discharge by Plaintiff, but was voluntary on his part, and no bona fide labor controversy exists between the said Isenberg and plaintiff." The record amply justifies the findings of the trial court.

The defendants contend that the signing of contracts by the truck drivers with plaintiff to purchase milk was a violation of Article 9 of the labor contract which reads as follows:

"ARTICLE 9. CONTRACTS. The Employer agrees that no employee will be requested to make any contract either written or verbal which may conflict with this Agreement."

The evidence disclosed that when it was learned that plaintiff had offered its trucks for sale and was going to discontinue delivering milk, a number of truck drivers purchased trucks and each signed a contract with plaintiff to purchase milk as above-related. The signing of such a contract was not a violation of Article 9. This article forbids any member of the Union to sign "any contract" which would be inconsistent with the labor contract negotiated and signed by the Union on behalf of the Union members. The contracts which were signed did not pertain to conditions of labor and no provision thereof conflicted with or changed the labor contract in any respect. The point must be ruled against defendants.

Defendants point to other provisions of the labor contract which they claim were violated by the plaintiff by reason of discontinuing the delivery of milk. Such complaints are all based on the theory that the contracts between plaintiff and the operators of the trucks did not constitute the operators independent contractors. For the reasons heretofore assigned, there is no merit in such contentions.

The judgment of the trial court must be and is hereby affirmed. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.