LOCAL UNION NO. 600, UNITED AUTOMOBILE, AIRCRAFT & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW–CIO et al. v. FORD MOTOR CO.

Civ. No. 11081.

United States District Court
E. D. Michigan, S. D.

June 5, 1953.

Goodman, Crockett, Eden & Robb and Ernest Goodman, Detroit, Mich., for plaintiffs.

William T. Gossett, Atty., Dearborn, Mich., Malcolm L. Denise, Duane D. Freese and Joseph A. O'Reilly, Dearborn, Mich., of counsel, for defendants.

THORNTON, District Judge.

This is a motion to dismiss a bill of complaint which, in substance, alleges the following:

That the plaintiffs, and each of them, are citizens of the state of Michigan, and that the defendant is a Delaware corporation having its principal office, manufacturing plant and facilities within the jurisdiction of this Court, and that the matter in controversy is in excess of $3,000.

The jurisdiction of the subject matter of this suit is conferred upon this Court under Article III, § 2 of the Constitution of the United States; Labor Management Relations Act, 1947, § 18, Tit. 29 U.S.C.A. § 185; 61 Stat. 156, Tit. III, § 301, and Rule 23(a) (1) and (3) of the Federal Rules of Civil Procedure, 28 U.S.C.A.; that the plaintiffs are authorized to sue, and do sue, in behalf of themselves and all other similarly situated employees which constitute a class so numerous as to make it impractical to set forth their names herein, but with respect to whom the char-

acter of the right herein asserted presents common questions of law and fact, and common relief is sought.

That the individual plaintiffs are members of the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW–CIO) known as the "International Union"; that the International Union is a voluntary unincorporated labor organization of employees employed in the automobile and related industries, including the plants of the defendant, and has its headquarters in the city of Detroit and state of Michigan; that the members of the International Union at each plant generally are organized into a Local Union, which Local Union is affiliated with, and chartered by, the International Union. Those Local Unions which are composed of employees of defendant are further grouped, for purposes of collective bargaining, into a department of the International Union called the National Ford Department. That the individual plaintiffs herein constitute all the officers, members of the Executive Board, and chairman of the occupational and building units of plaintiff, Local Union No. 600 of the International Union and, together with the other similarly situated employees on whose behalf this suit is instituted, constitute the entire membership of said Local Union. That Local Union No. 600 is the largest local union in the world, with headquarters at Dearborn, Michigan, and its membership is composed entirely of production, maintenance and construction, transportation and tool and die workers employed by defendant at the Rouge Plant, and engaged in the production of motor vehicles and/or automotive parts and equipment for interstate and world commerce. That the defendant, Ford Motor Company, is one of the oldest, largest and most prosperous producers of automobiles, motor vehicles and automotive parts in the world, its headquarters and principal manufacturing plant is River Rouge, located in Dearborn, Michigan, this plant being the largest single manufacturing unit in the world, constituting a completely integrated production system producing finished automobiles and motor vehicles from basic raw products. In addition, the defendant company has other plants and subsidiaries located throughout the United States and in the principal countries of the world.

For many years prior to the present time, the Rouge Plant has been the source of employment for approximately 80,000 hourly-rated workers who live with their families in the Greater Detroit area, including surrounding communities inhabited mainly by Ford workers and their families, and that the economic life, growth and development of this Greater Detroit area has been, and is, dependent in substantial measure upon the continuation of the high level of production activities of the Rouge Plant, and the affording of continued and substantial employment to the plaintiffs, and to thousands of other residents who reside in this area who work at, or in connection with, said plant, and that any substantial decrease in the operations of the Rouge Plant is immediately reflected in increased relief rolls, increased unemployment compensation claims, decreased retail sales, and a lowering of public morale in the Greater Detroit area, all of which has been the subject of official notice by several of the governing bodies of the communities which comprise the Greater Detroit area, as evidenced by certain official resolutions around these communities that have been attached to the bill of complaint.

That the defendant company has a long history of opposition to organized labor and to the organization of its employees, including the use of violent and other unlawful means to destroy and break up organizations of its employees, as indicated by certain decisions of the National Labor Relations Board which this Court is requested to judicially notice.

That since June 1941, following an election and subsequent certification of the International Union by the National Labor Relations Board as bargaining representative for defendant's employees, there has existed a collective bargaining agreement governing the wages, hours and working conditions agreed upon and entered into between the defendant and the Internation-

al Union and Local Union No. 600 for the benefit of plaintiffs, which said agreement has been amended and renewed from time to time; the most recent renewal occurring on or about September 4, 1950, and, together with amendments thereto, is now in effect and, by its terms, is to remain in effect until June 1, 1955, and for successive yearly periods thereafter unless terminated as therein provided, a copy of said agreement being attached to the bill of complaint.

That in the negotiations which preceded and resulted in the execution of the current agreement, the plaintiffs herein were represented by the National Ford Department of the International Union and by a bargaining committee composed of representatives of local unions in the various plants of the Ford Motor Company, including Local Union No. 600. The current agreement was submitted to, and approved by, a majority of the members of Local Union No. 600 of the International Union, who were employed by the defendant company, and upon the basis of, and by reason of, the representations made by the defendant, as hereinafter set forth.

That under the terms of the current agreement, plaintiffs obtained and became entitled to, and received, certain valuable rights including, by way of illustration, agreed-upon wage rates, security of tenure in their employment classification at said Rouge Plant, the right to employment in accordance with seniority at said plant, paid vacations, paid holidays, pensions, insurance and health benefits, all as specified in the said current agreement, many of which said rights to other than wages and seniority were agreed upon by the parties and accepted by plaintiffs in lieu of wage increases; and any permanent cessation of employment of the plaintiffs, or any of them, by the defendant will result in a loss to plaintiffs of the aforesaid rights, and any replacement of plaintiffs, or any of them, by means of the employment of new employees at new plants of defendant, will result in substantial savings of large sums of money and profits by the defendant.

That upon information and belief, at the time the current agreement was negotiated, and ever since the effective date of said current agreement, it was, and has been, mutually agreed and understood by the parties hereto, and was an implied condition of the agreement and an integral part thereof, that the defendant company would, in good faith, maintain the same volume of production and the same operations and facilities as existed at the Rouge Plant at the time of the negotiation and execution of the current agreement, and would not intentionally transfer or contract out any of the productive activities in that plant so as to substantially reduce the employment rights and opportunities of the plaintiffs, or jeopardize any of the rights which would accrue to the plaintiffs under the current agreement; that the aforesaid mutual agreement and understanding was, and is, an essential condition of the current agreement, and was part of the consideration therefor moving from the defendant to the plaintiffs; and that the contracting parties, by necessary implication, recognized that such contract rights as the wage rates, the paid holidays, paid vacations, seniority, retirement, pensions and numerous other benefits agreed upon in said current agreement, have value for the plaintiffs only in the continued employment of plaintiffs by defendant at the Rouge Plant.

Further, upon information and belief, the plaintiffs relate that in the period since the execution of the current agreement, and continuing until the time of the filing of the bill of complaint, the defendant has inaugurated, and is presently following, a deliberate, systematic and intentional policy of permanently decentralizing and transferring substantial portions of its production operations formerly performed by the plaintiffs in the Rouge Plant to other plants of the defendant located outside the Greater Detroit area, and outside of the state of Michigan; that such transfers have been and are being carried out at such an accelerated rate that thousands of Rouge Plant production, maintenance, transportation and tool and die workers have lost their employment with defendant, and additional large numbers of these

plaintiffs are threatened with a similar loss of employment at said plant.

Further, on information and belief, the plaintiffs relate that during the same period mentioned in the preceding paragraph, and continuing until the filing of the bill of complaint, the defendant has inaugurated and is presently following a deliberate, systematic and intentional policy of permanently contracting and farming out to independent contractors substantial portions of the production, transportation, construction and maintenance and tool and die work formerly performed by the workers at, on, in and around the Rouge Plant, and has dismantled, transferred and disposed of substantial portions of the machinery and other facilities utilized in such work with like effect upon the Rouge Plant workers, and these plaintiffs, as set forth in the preceding paragraph.

Further, on information and belief, plaintiffs relate that the policy and action of the defendant, as set forth above, already has resulted in the loss of employment to thousands of workers at the Rouge Plant and in the reduction of the actively employed membership of plaintiffs' Local Union; that this reduction in employment at the Rouge Plant is increasing at an accelerated rate, and plaintiffs believe and fear that unless restrained by the timely intervention of this Court, the defendant's action will result in the wholesale unemployment of the plaintiffs and the reduction of the Rouge Plant to a mere shell of its former capacity.

That this action which has been taken, and is being taken by the defendant, as set forth in the two preceding paragraphs, is wrongful, willful, deliberate and in violation of the current agreement, and that it constitutes the denial by defendant of the aforesaid rights and benefits which have accrued to the plaintiffs under the current agreement.

That, further, the plaintiffs believe and fear that the continuation of the aforesaid wrongful action by the defendant threatens to drastically curtail employment operations at the Rouge Plant, including the opportunities of the plaintiffs; that it will undermine and destroy the aforesaid rights and benefits which have accrued to plaintiffs under the said agreement; and will cause an anticipatory breach of the provisions for pension, retirement and insurance benefits assured to the plaintiffs under the current agreement.

Plaintiffs further allege, upon information and belief, that the defendant's aforesaid policy of decentralization and transferring of substantial portions of its production operations from Rouge Plant to places outside the state of Michigan, and the contracting out of substantial portions of the maintenance and construction, transportation and tool and die work formerly carried on at the Rouge Plant was determined and planned, and preparations therefor were made by the defendant long prior to the negotiations which culminated in the execution of the current agreement; that this policy, as well as the plan and the scheme for its implementation, was deliberately, intentionally and wrongfully withheld and concealed by the defendant from the plaintiffs, and from the collective bargaining representatives of the plaintiffs during the course of the aforesaid negotiations; and that although at the time of said negotiations there were vague newspaper and other rumors of such a scheme and plan of conduct on the part of the defendant, the defendant expressly denied to plaintiffs, and to the collective bargaining representatives of plaintiffs, that any such plan or scheme had been adopted, and intentionally and wrongfully led the plaintiffs, and the said representatives of the plaintiffs, to believe that such rumors were unfounded in fact.

Because of the aforesaid rumors and the statements that the defendant intended to establish additional production facilities in other parts of the country, and outside of the Rouge Plant and the state of Michigan, plaintiffs, through their collective bargaining representatives, requested of defendant an undertaking by the defendant that no substantial operations and construction and maintenance work would be transferred from the Rouge Plant, or contracted out to independent contractors, and that in sub-

sequent public statements made, and assurances given to the plaintiffs, and reaffirmed by the defendant in negotiations leading up to the said current agreement, defendant assured plaintiffs that notwithstanding that the defendant did have certain plans for expanding its operations and facilities through the construction of new plants, such plans were not for the purpose of transferring or contracting out any of the operations or other activities being performed by plaintiffs in the Rouge Plant at the time but, instead, that said plans contemplated construction and maintenance of additional facilities in other states for the production of additional and different products; and, further, that it was defendant's plan and purpose not only to maintain at least the current employment levels at the Rouge Plant, but to further expand and increase the production operations and the number of employees in said plant.

Plaintiffs further allege that the aforesaid assurances given by the defendant were false, and that defendant well knew at the time that they were false, and that the policy and wrongful action being taken by the defendant pursuant thereto, as set forth above, constitutes a fraud upon the plaintiffs in that at no time prior to, or during the negotiations which led up to and culminated in the current agreement, was there any communication or intimation from the defendant, or any of its representatives, to these plaintiffs, or the representatives of these plaintiffs, that the defendant was planning, or had planned or intended any substantial transfer or contracting out of the usual and customary production operations, maintenance and construction activities and facilities of the defendant then being performed and carried on by these plaintiffs at the Rouge Plant at Dearborn, Michigan, but, on the contrary, were denied by the defendant.

Further, on information and belief, the plaintiffs allege that the policy and the action taken by the defendant, as set forth above, has been taken, and is being pursued for the purpose of enabling defendant to avoid its obligations to the plaintiffs under the current agreement by reducing the amount of work to be performed by the Rouge Plant, and to secure the unjust enrichment of defendant by obtaining for defendant cheaper labor and more advantageous employment conditions in other communities outside the Greater Detroit area and the state of Michigan; and that the continuation of defendant's present policy and action is causing, and will cause inestimable loss of earnings and suffering to the plaintiffs and the families of the plaintiffs.

Plaintiffs further allege, upon information and belief, that the concealment, misrepresentations and false denials of the defendant, as set forth in the two preceding paragraphs, were deliberately and fraudulently made by the defendant to the plaintiffs, and to the collective bargaining representatives for the plaintiffs, for the purpose of inducing the representatives of the plaintiffs to enter into the current agreement, and for the purpose of inducing the plaintiffs to ratify the said current agreement and make the same effective; and that by virtue of the aforesaid fraudulent assurances, misrepresentations, concealments and denials, the defendant induced plaintiffs' representatives to enter into and execute the aforesaid current agreement, and to refrain from insisting upon the inclusion therein of specific provisions designed to prevent the aforesaid substantial transference and contracting out of operations from the Rouge Plant to other plants outside the state of Michigan during the term of the agreement.

That by reason of said fraudulent misrepresentations, concealments, assurances and denials by the defendant, as aforementioned, in the inducement of the plaintiffs, and the representatives of the plaintiffs, to execute and approve said current agreement, said agreement is null and void and should be decreed by this Court to be null and void, and thereby of no force or validity, and not binding upon the plaintiffs herein.

In conjunction with the foregoing allegations, the plaintiffs ask the following relief:

That defendant be required to answer this complaint.

That the Court decree that the labor agreement between the defendant, Ford Motor Company, and the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, UAW–CIO, dated September 4, 1950, be construed to prohibit defendant, for the duration of the agreement, from moving production operations from its Rouge Plant at Dearborn, Michigan, to other of its plants, or to other manufacturers with the effect of reducing production and employment at its Rouge Plant; that the Court decree further that said labor agreement be construed to prohibit defendant, for the duration of the agreement, from contracting or farming out transportation, construction, maintenance and tool and die work now being performed or formerly performed by employees at its Rouge Plant.

In the alternative, that the Court reform said labor agreement of September 4, 1950, to conform to the understanding and agreement of the parties by prohibiting defendant, for the duration, from moving production operations from its Rouge Plant at Dearborn, Michigan, to other of its plants, or to other manufacturers with the effect of reducing production and employment at its Rouge Plant; that the Court further reform said labor agreement to conform to the understanding and agreement of the parties by prohibiting defendant, for the duration of the agreement, from contracting or farming out transportation, construction, maintenance and tool and die work now being performed or formerly performed by employees at the Rouge Plant.

In the alternative, that the Court decree that said labor agreement of September 4, 1950, be declared null and void.

That an injunction be issued by this Court restraining the defendant, for the duration of said labor agreement dated September 4, 1950, from moving production operations from its Rouge Plant in Dearborn, Michigan, to other plants, or to other manufacturers, with the effect of reducing production and employment at its Rouge Plant; that the Court further issue an injunction for the duration of said labor agreement restraining the defendant from contracting or farming out transportation, construction, maintenance and tool and die work from its Rouge Plant now being, or formerly performed at its Rouge Plant; that a temporary injunction be issued during the pendency of this cause to like effect.

That the mandatory injunction of this Court be issued directing defendant to move back to its Rouge Plant at Dearborn, Michigan, those operations which it has already moved to other plants, or to other manufacturers, with the effect of reducing production and employment at its Rouge Plant; that the Court further issue its mandatory injunction directing the defendant to cancel its agreements contracting or farming out transportation, construction, maintenance and tool and die work formerly performed at its Rouge Plant.

That the plaintiffs be awarded damages representing the loss of wages suffered by the employees by reason of the removal from its Rouge Plant at Dearborn, Michigan, of operations to other plants, or other manufacturers, with the effect of reducing production and employment at its Rouge Plant, and by reason of the defendant having contracted out or farmed out transportation, construction, maintenance and tool and die work formerly performed by employees at its Rouge Plant.

In relation to the foregoing, the plaintiffs, in the preliminary statement of their reply brief to defendant's motion to dismiss, summarize as follows:

"Plaintiffs filed this Complaint to obtain the aid of the Federal District Court to enjoin the decentralization of the Rouge plant of the Ford Motor Company and for damages. The Complaint is based upon two alternative theories:

"(a) that the Court construe the current agreement to contain an implied condition prohibiting the defendant from carrying out this decentralization,

and if so construed, to enjoin its breach; or, in the alternative,

"(b) that the Court find that the current agreement was procured by fraud and on the basis of such finding to either decree its reformation or its avoidance."

In its formal motion, the defendant alleges 18 separate and distinct grounds upon which the action should be dismissed by the Court, and after informing the Court that it is not its intention to abandon any of the grounds set forth in its formal motion, or advanced in the oral argument, recites in its memorandum in support of its motion to dismiss, five principal grounds upon which it relies for the dismissal of the complaint, and which are as follows:

"First, the complaint should be dismissed because the plaintiffs in this suit are not the proper parties to bring this kind of an action and they have no capacity to sue;

"Second, the collective bargaining agreement in question provides a complete and exclusive forum and remedy for the breach of contract claims here asserted, and under the controlling authorities, this suit cannot be maintained;

"Third, the complaint should be dismissed because it is based upon certain matters the determination of which has been vested by Congress exclusively within the jurisdiction of the National Labor Relations Board;

"Fourth—and we do not think that the Court will need to decide this point, because the others are dispositive of the case before it is reached—it clearly appears that no contractual obligation of the nature sought to be enforced exists; and

"Fifth, the complaint should be dismissed because this Court has no jurisdiction to grant any of the injunctive relief prayed for and insufficient facts are pleaded upon which to base any award of monetary damages."

Simply stated, the action is one directed toward preventing the defendant company from decentralizing its Rouge Plant oper-

ations to other plants of the defendant outside the Detroit area.

Plaintiffs contend that such prohibition was an implied condition of the current labor agreement between the UAW–CIO and the defendant company. It is alleged that the proposed decentralization will adversely affect the employment rights of plaintiffs which they are entitled to have protected under the agreement. Plaintiffs ask that the agreement be construed to prohibit defendant from taking the allegedly proposed steps toward decentralization or, in the alternative, that the Court reform said labor agreement to so prohibit, or to declare said agreement null and void; also plaintiffs pray for injunctive relief and for money damages.

There has been full and capable argument by both sides in open court on the motion, and extensive briefs have been filed by both parties; however, we see no necessity for an exhaustive opinion concerning the grounds above listed. The Court has before it, as a part of the pleadings, a copy of the labor agreement which is the subject of this controversy. It is obvious that it was a carefully and laboriously prepared document, and that both the UAW–CIO and the Ford Motor Company had the benefit of competent counsel and representatives in the negotiations. Nothing to the contrary is claimed by the parties. The plaintiffs contend that defendant was guilty of fraud in that it deliberately withheld the information at the time of the negotiations, that it was planning decentralization, and that such proposed plan was contrary to the understanding upon which the contract was based.

We cannot agree with the views of the plaintiffs on this contention, and so completely do we disagree that we think our view on this aspect of the case is dispositive of the motion.

The contract here was entered into by parties having full knowledge of what they were doing, and of the purposes in reducing such agreement to writing. The booklet representing the contract which has been attached to the complaint as Exhibit 6 contains 199 pages including a comprehensive

842

index. The Table of Contents is as follows:

## "Table of Contents

| Article | | Page |
|---|---|---|
| I | Recognition | 7 |
| II | Union Shop | 11 |
| III | Dues and Assessments | 13 |
| IV | Company Responsibility | 15 |
| V | Strikes, Stoppages and Lockouts | 20 |
| VI | Representation | 22 |
| VII | Grievance Procedure | 34 |
| VIII | Seniority | 56 |
| IX | Wages and Vacations | 82 |
| X | Miscellaneous | 111 |
| XI | Duration of Agreement | 116 |
| | Signatures | 118 |
| | Appendix A—Assignment and Authorization for Check-off of Membership Dues | 119 |
| | Appendix B—Five Day Notice | 121 |
| | Appendix C—Separate Occupational Group Seniority Agreements | 121 |
| | Appendix D—Separate Skilled —Group Seniority Agreements | 121 |
| | Settlement Agreement, dated May 29, 1949 | 122 |
| | Letter Regarding Maintenance and Construction Work | 126 |
| | Letter Regarding Absence for Military Training | 128 |
| | Agreement dated August 15, 1949 Regarding 'Three-Day Transfers' | 129 |
| | Memorandum Regarding Dues Deductions dated July 11, 1950 and Revised Assignment and Authorization for Check-off of Membership Dues Form | 132 |
| | Agreement Concerning Retirement Plan (Part A) and Retirement Plan (Part B) | 139 |
| | Index to Collective Bargaining Agreement of September 28, 1949 | 181 |
| | Index to Agreement Concerning Retirement Plan (Part A) | 196 |
| | Index to Retirement Plan (Part B) | 198" |

A reading of all the terms and conditions of this agreement leaves one with the unshakable impression that its framers fully intended to state clearly therein every point of importance in the minds of the contracting parties, yet the plaintiffs wish us to believe that there was a major area of understanding on a specific point, easily includible in the written contract, but not so included. No claim of oversight or inadvertence is made. The claim is simply that there is a part of this agreement that is not contained in the writing evidencing said agreement. It would be difficult to imagine a more detailed outline of procedures under the various articles than is here presented, indicating the thoroughness of coverage intended by the instrument. To say that the parties intended this agreement to be construed as plaintiffs contend, where there is no indication for said construction, is to stretch our imagination far beyond a proper degree of reason. To say that there is a term of this contract properly a part of it, but not included in the signed agreement, and to order that there be reformation so that it be included, is to do violence to the settled law of contracts and equity. The very wording of Article IV, Section 1 of the contract is contrary to the contention of the plaintiffs that there was a basic understanding that the company would not decentralize its operations, such wording being as follows:

"Section 1. The Company retains the sole right to manage its business, including the rights to decide the number and location of plants, the machine and tool equipment, the products to be manufactured, the method of manufacturing, the schedules of production, the processes of manufacturing or assembling, together with all designing, engineering, and the control of raw materials, semi-manufactured and finished parts which may be incorporated into the products manufactured; to maintain order and efficiency in its plants and operations; to hire, lay-off, assign, transfer and promote employees, and to determine the starting and quitting time and the number of hours to be worked; subject only to such regulations and restrictions gov-

erning the exercise of these rights as are expressly provided in this Agreement."

The plaintiffs contend that at the time of the negotiations leading up to the instant agreement there was an implied condition to, and an integral part of, the agreement that there would be no decentralization of the Rouge Plant operations, yet nowhere in the comprehensive agreement is such a condition set forth. The written agreement clearly purports to cover all conditions within the contemplation of the parties at the time of its execution. Can the plaintiffs be heard to say that there is a vital basis for the agreement that is not contained therein? If this all-important consideration so claimed by plaintiffs was in fact present, why was it not contained in the written embodiment of the understanding between the parties? The plaintiffs do not claim that their bargaining representatives were so naive and inexperienced as to have suffered the defendant to talk them out of including such a condition in the contract on the grounds that it was unnecessary to have it in there. The plaintiffs offer no explanation for the omission of said condition from the written contract. It is difficult to conceive of parties to a contract, who were as diligent in its preparation as these parties, purposely omitting a vital condition. The only possible conclusion that can be drawn is that such condition did not in fact exist.

The plaintiffs have woven into the fabric of their complaint, upon information and belief, allegations of concealment, misrepresentations and false denials deliberately and fraudulently made by the defendant to the plaintiffs and/or to plaintiffs' representatives, concerning the maintenance of the same volume of production and the same operations and facilities as existed at the Rouge Plant at the time of the negotiation and execution of the contract under consideration in this matter.

While it is elementary that in considering a motion to dismiss the Court must assume the truth of all material and well pleaded allegations of fact, it is also a matter of some significance to this Court that the contract was executed on behalf of the International Union, United Automobile Workers of America, CIO, the properly designated bargaining agent for all of the employees of the Ford Motor Company, by Walter P. Reuther, Ken Bannon, Gene Prato, Frank Guerro, Andrew D. Neideffer, James H. Warren, Jack Conway, Ed H. Jirousek, Neil Rice, G. H. Wynne, William Neville, James B. Conway, William M. Payne, Ben F. Tyra, David H. Harmon and James Romanow, yet this group has not joined as a party plaintiff in complaining of the alleged fraudulent conduct on the part of the company. Since fraud is odious and not to be presumed, and inasmuch as contracts may be presumed to have been made in good faith until the contrary appears, the nonappearance in this action of the group who signed the contract allegedly induced by fraud practiced upon it renders doubtful the weight of said allegations.

In further consideration of the allegations of concealment, misrepresentations and false denials, no claim is made that the misrepresentations were of a factual or concrete nature—but rather that they had to do with future plans and intentions. An organization the size of the Ford Motor Company may well have hundreds of plans under advisement, many of which might be diametrically opposite, many of which may be definite as of one day, and completely discarded the next day. Surely the plaintiffs here do not claim that the Ford Motor Company may not make new plans, revamp proposed plans, and discard any or all. Suppose that Ford Motor Company did represent that they had no plan to decentralize. Assume that they did so represent. Are they bound thereby? What is there to prevent the company from a decision in the future to shut down the entire Rouge operation? Plaintiffs lay great stress on implied conditions. It would seem that the paramount implied condition is that the contract can be operative only so long as there is subject matter on which to operate. It is to apply to workers and the company to the extent that the company has workers. The num-

ber of workers bears some relation to the work there is to be done, and the place where the work is to be done is, by the very terms of the written contract, within the discretion of the company.

The plaintiffs claim failure of consideration for the reason that the plaintiffs lose their benefits from the contract if the Rouge employment decreases. In other words, plaintiffs actually are contending that the Rouge Plant must continue to maintain its operations so as to give employment to all the plaintiffs for the entire life of the contract. Do they also contend that the plaintiffs stand ready to furnish defendant with their services for the entire life of the contract? Somewhere along the line is the concept of mutuality. It is so inconceivable that the company herein would have tied its own hands in the manner plaintiffs would have us believe, and in a manner wholly inconsistent with the express wording of the contract, that the Court concludes that there was no such fraud practiced upon the plaintiffs as to warrant the relief requested. Plaintiffs were in as good a position as defendant in all ways in the matter of entering into this contract—if they considered the so-called condition as having existed and been agreed upon, they had every reason to insist upon its inclusion in the written contract. Perhaps they made efforts in that direction and, if defendant refused, it is clear that plaintiffs were agreeable to taking their chances on whatever direction the plans along that line might take, and that such condition was not a part of the agreement. It is the general rule that parole evidence is not admissible to vary the terms of a written contract.

During the argument on the motion to dismiss, counsel for the plaintiffs stated:

"I am frank to tell the Court this point, that on many of the issues which I will argue here today, and take an opposite position from counsel, that no final determinative or definitive decision has yet been made to which either of us can refer the court for final determination for some of these issues.

As a matter of fact, I think the issues raised here in these pleadings, in the way they have been raised and the manner in which they have been alleged, are perhaps unique in the history of American labor-employer relations, because I don't know of any case anywhere which has raised the precise question, the important question, which goes to the very heart of this case, and that is the rights of workers under a contract with an employer extending over a long period of time to have some security in the retention of the work processes on which they are employed for the duration of the contract, and the accumulation of the rights which they can only acquire if the employer continues his operations at that particular place where they are employed."

and in keeping with this pronouncement this Court has engaged in extensive research and can find no authority in law or in equity that would justify this Court in construing the current agreement as containing an implied condition prohibiting the defendant from carrying out the alleged decentralization, and in so construing it, to enjoin its alleged breach when, to do so, would require this Court to ignore and withdraw from the contract the express provision which unequivocally vests in the company, and only in the company, the right

"* * * to manage its business, including the rights to decide the number and location of plants, the machine and tool equipment, the products to be manufactured, the method of manufacturing, the schedules of production, the processes of manufacturing or assembling, together with all designing, engineering, and the control of raw materials, semi-manufactured and finished parts which may be incorporated into the products manufactured; to maintain order and efficiency in its plants and operations; to hire, lay-off, assign, transfer and promote employees, and to determine the starting and quitting time and the number of hours to be worked; subject only to

such regulations and restrictions' governing the exercise of these rights as are expressly provided in this Agreement."

The motion to dismiss plaintiffs' complaint is granted, and an order may be presented accordingly.