139 So.2d 601

**SEALTEST FOODS DIVISION OF NATIONAL DAIRY PRODUCTS CORPORATION**

v.

**E. L. BYARS et al.**

**6 Div. 716.**

Supreme Court of Alabama.

March 29, 1962.

Deramus, Fitts & Johnston, Gilbert E. Johnston and Sydney Lavender, Birmingham, for appellant.

Corretti & Newsom, Birmingham, for appellees.

**312**

SIMPSON, Justice.

The genesis of this litigation was the granting, ex parte, of a temporary injunction on December 20, 1960, prohibiting appellant company from proceeding with its program to terminate the retail milk department at its Birmingham plant or in the alternative to institute a system of independent distributorships for the retail delivery of milk. Subsequently, a motion to dissolve was filed by appellant and on December 27, 1960 to January 3, 1961, a hearing was conducted which resulted in the decree of March 16, 1961, overruling said motion to dissolve. From this decree appellant prosecutes this appeal.

This rather narrow issue here involved is whether or not the trial court abused its discretion in refusing to dissolve the injunction. State ex rel. Gallion v. Simonetti, 270 Ala. 66, 116 So.2d 572; Slay v. Hess, 252 Ala. 455, 41 So.2d 582.

Judge Giles of the Tenth Judicial Circuit has written a well considered opinion in support of the lower court's order. Byars et al. v. National Product Corp., Sealtest Food Div., 35 LC (CCH), ¶ 16858. We do not now consider it appropriate to approve or disapprove of the statements of law therein but certain factual references have greatly assisted this court in reaching its decision that the trial court did not abuse its wide discretion in this case.

The necessity for the maintenance of the status quo between the parties pending a hearing upon the merits of the suit is brought into focus by Article 3 of their Collective Bargaining Agreement which reads as follows:

> "The Employer agrees not to enter into any agreement, or contract, with his Employees, either individually or collectively, except by this contract, or in any way interfere with the rights to membership in the Union, or that in any way might conflict with the terms and provisions of this Agreement."

Appellant, after investigation and study, determined that its retail milk department was a financial burden and concluded that it should convert that department to retail distributorships or otherwise terminate its retail business. It is here urged that such decisions are the prerogatives of management and in no wise conflict with the Collective Bargaining Agreement.

■ If the ultimate question involved could be reduced to such simplicity the appellant should and would prevail. A collective bargaining agreement does not operate as a guarantee of employment. Local Union No. 600, United Automobile, Aircraft and Agricultural Implement Workers of America v. Ford Motor Co., 113 F.Supp. 834 (E.D.Mich.1953); Amalgamated Assoc. of Street, Electric Ry. & Motor Coach Employees of America, Division 1326 v. Greyhound Corp., 5 Cir., 231 F.2d 585, 57 A.L.R.2d 1394. But a labor contract like any other can be breached and the company here, by the Collective Bargaining Agreement, has surrendered many matters of both policy and detail that would otherwise be within its unbridled province and discretion. Whether or not the company decision and the manner of its execution was violative of the contract is the question which will be decided on a trial of the merits of the case.

■ The appellant relies heavily upon the case of Dairy Bakery and Food Workers v. Grand Rapids Division of National Dairy Corp., D.C., 160 F.Supp. 34. There

another division of this same National Dairy Corp. decided that as of March 1, 1958, it would close its processing plant at Grand Rapids and concentrate its processing in a new plant in Lansing, Michigan, and further that it would sell milk f. o. b. dock in Grand Rapids to independent contractors for distribution from house to house at such prices and on such terms to the consumer as the independent contract might fix with the consumer. In that case, on January 23, 1958, the National Dairy Corp. *advised the Union* representing the driver employees of its intention to sell its retail business, and offered its present employees an opportunity to buy the retail routes. The court there held the company's action to be managerial and not violative of the Collective Bargaining Agreement containing a similar clause though not identical to Article 3 of the contract here involved. The opinion does not disclose any negotiations between National Dairy Corp. and individual members of the Union. The Union there appeared basically to be claiming that the company was "discontinuing employment" and "discharging employees" and not that the company was breaking its contract by making contracts with its employees.

In the case at bar it appears that on December 7, 1960, at a scheduled company meeting of the route deliverymen and route foremen, the Alabama Zone Manager for the company announced that Sealtest had decided to convert its retail milk department to retail distributorships. It established interviewing teams to explain how and under what terms the routes would be offered for sale. Interviews were had with the employees. Sales contracts, routes, loan agreement, collection responsibility, and allied matters were discussed with the individual employees. Subsequently a Union representative, upon complaints from Union members, testified that on December 9, 1960, he talked with a company representative and was told by this representative that "they would either go into this distributorship, or go and consolidate the routes down to where they

could make a profit, and eventually they might just have to go on out of business".

If this be true, then up to this point management had made no decision. The final decision of the company was announced on December 12, 1960, by the company on the bulletin board at the Birmingham plant in a notice to all retail route salesmen advising that commencing Friday, December 16, 1960, all retail routes would be offered for sale. However on December 14, 1960, after the December 12, 1960 bulletin, announcing the decision to sell the routes, the employee drivers were again contacted by letter which explained the company's decision to convert to distributorships, the advantages of such arrangement, renewing the offer to sell first to the present employees, and concluding that:

> "*Our* retail customers would continue to be supplied with *Sealtest produce* and *we would not suffer a serious* reduction in volume through our production department." (Italics ours.)

It is apparent that at least one of management, even under the contemplated distributorship system, would still regard the customer as belonging to the company.

We think these facts alone sufficient to distinguish Dairy Bakery and Food Workers v. Grand Rapids Division of National Dairy Corp., supra.

Appellant contends that since the lower court could not presently find the proposed change in operations to be mala fide that it necessarily follows that the decision of management must prevail. Writing to this the lower court said:

> "This findings as to bona fides and reality is made solely and only within the limits of strict issues in this particular case, and only upon the somewhat summary presentation of proof utilized in hearings of this nature."

We conjecture that perhaps the lower court in considering the bona fides of management's decision to convert to distributorships was equally concerned with the bona

fides of a former management decision; i. e., the execution of the labor contract here involved.

Distinguishing appellant's cited authority of Adams Dairy Company v. Dairy Employees Union, 363 Mo. 182, 250 S.W.2d 481, Judge Giles in his opinion observed:

"In the instant case it must be constantly borne in mind that what is proposed is simply to convert the identical former employees into independent contractors and while this fact alone is not sufficient to deny the presumed good faith of the transaction as heretofore noted, it is still of importance in ascertaining the actual intent of the parties and the actual and practical effect of the change when tested by the written provisions of the existing contract."

While pretermitting determining the correctness, vel non, of the lower court's observation as to Article 3 of the Collective Bargaining Agreement, this observation should be taken into account to determine whether or not the lower court abused its discretion—and reads as follows:

Paraphrased, the Company binds itself not to make a contract with any employee (and this would be assumed to mean anyone who occupies that status during the life of the agreement and is in such status when such contract is sought to be made) except by the Union contract, (but the word 'by' is here thought to mean through and consistently with the Union contract) and the Company specifically agrees to refrain from contracting with such employee in any fashion which *might* conflict with the provisions of the Union contract."

With reference to the importance of factual matters on a hearing of this nature, the court in Saxon v. Parson, 206 Ala. 491, 90 So. 904, 905, said:

"Code, § 4535, [now Title 7, § 1061] governing hearing on motion to dissolve injunction, changed the rule which accorded a measure, at least, of concluding effect to the full denials of a sworn answer, and, while giving to such an answer an effect as evidence, constituted *the issue on hearing of motion to dissolve one of fact mainly,* if the bill possesses equity." (Italics ours.)

Appellant contends that this court is equally qualified to interpret the written instrument and that when the trial court has erroneously construed a written instrument in denying a motion to dissolve a temporary injunction, the injunction may be dissolved on appeal.

We do not consider the contract here involved, when viewed together with the facts adduced on the hearing, to be so clear as to give rise to only one conclusion as was the contract (agreement not to engage in taxi business in Ashland, Alabama) in Saxon v. Parsons, supra, or the zoning ordinance considered in Drennen v. Mason, 222 Ala. 652, 133 So. 689 (whether or not a miniature golf course, although a business, was such a business as would constitute a nuisance and therefore subject to be enjoined under the ordinance).

The lower court, after stating the effect of testimony taken, and what might or might not be developed upon a full hearing, the relative positions of the parties and the damages each might suffer and envisioning a possible breach of contract retained in force and effect the status quo injunction. We think what has been said should illustrate that the facts fall short of those which would justify this court in concluding there has been an abuse of discretion and that this court at this time interpret the contract and dissolve the injunction.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.