### WALLACE v. SOUTHERN PAC. CO.
#### No. 29015.

United States District Court
N. D. California, S. D.

May 23, 1951.

Findings of Fact and Conclusions of Law
June 12, 1951.

Ryan & Ryan, San Francisco, Cal., for plaintiff.

Burton Mason and W. A. Gregory, Jr., San Francisco, Cal., for defendant.

GOODMAN, District Judge.

On the merits, the evidence does not sustain plaintiff's allegation that his discharge by defendant was a breach of the agreement delineating the terms of his employment. To the contrary, I find the evidence to be persuasive that the discharge of plaintiff was proper. Furthermore, as in Buberl v. Southern Pac. Co., D.C., 94 F.Supp. 11, plaintiff not only failed to pursue the remedies provided by the contract governing his employment, but he had already been compensated in Wallace v. Southern Pac. Co., No. 27184,[1] for the loss of earnings he seeks to recover in this case.

1. No opinion for publication.

Judgment for defendant. Prepare findings pursuant to the rules.

### Findings of Fact.

1. This action was brought for alleged breach of the collective bargaining agreement which sets forth the general terms and conditions covering the former employment of plaintiff by defendant. Jurisdiction of this Court arises under 28 U.S.C.A. § 1332, the plaintiff being a citizen of the State of California and a resident and inhabitant of the Northern District of California, Southern Division, the defendant being a Delaware corporation, and the amount in controversy being, exclusive of interest and costs, in excess of $3,000, to-wit: approximately $6,000.

2. From November 21, 1944, until January 23, 1946, plaintiff was employed by defendant, a common carrier by railroad, as a brakeman.

3. At all times material to this case brakemen employed by defendant were within the class or craft of employees represented, pursuant to the provisions of the Railway Labor Act, 45 U.S.C.A. 151, et seq., for collective bargaining purposes by the General Committee, Brotherhood of Railroad Trainmen (hereinafter referred to as the B. R. T.).

4. At all times material to this case there was in force and effect a written collective bargaining agreement between defendant and the B. R. T. which set forth the rates of pay, rules and working conditions including the procedure for the handling of grievances, applicable to brakemen. The provisions of Article 57 and Article 58 of said collective bargaining agreement are set forth in defendant's Exhibit F in evidence and are referred to and incorporated herein by reference.

5. Additionally, at all times material to this case there was in force and effect between defendant and the B. R. T. a written Agreed-to Interpretation of the provisions of said Article 58, Section (c). The provisions of said Agreed-to Interpretation are set forth in Appendix B to defendant's Answer and are referred to and incorporated herein by reference.

6. On or about July 28, 1945, plaintiff fell from the top of a railroad car and suffered certain injuries while working during the course of his employment with the defendant as a brakeman. Plaintiff was a patient for three days in a hospital at Dunsmuir, California, under the care of Dr. Eugene V. Anderson, and then was permitted at his request to go to his home. After two further visits to Dr. Anderson's office in the ensuing few days, plaintiff, alone and unassisted, made a round trip from Dunsmuir, to Chicago, Illinois. He did not return to Dr. Anderson for any purpose and consequently was never given a return-to-duty slip. Plaintiff made a second trip in which he drove to Kansas City, Mo., in October of 1945, and he remained out of the State of California continuously from that time until about September, 1946. While in Missouri, plaintiff engaged in various activities. On or about November 1, 1945, plaintiff filed an action in the Superior Court of Cook County, State of Illinois, against this defendant as defendant therein, seeking damages from defendant on account of personal injuries, resulting from his aforesaid fall, which he alleged on information and belief to be permanent in character. Said suit was later dismissed by plaintiff without prejudice.

7. On or about December 10, 1945, defendant addressed and mailed to the plaintiff a registered letter (Exhibit No. 1 in evidence, the terms of which are referred to and incorporated herein by reference), which was received by him personally on or about December 16, 1945, advising him that it was necessary for him to report for work in order to preserve his employment relationship and seniority. Plaintiff made no response to said letter.

8. On or about December 27, 1945, defendant addressed and mailed to plaintiff a letter (plaintiff's Exhibit No. 2), the body of which reads as follows:

> "You are hereby notified to be present in the Assistant Trainmaster's office at Dunsmuir on January 14, 1946, at 10:00 AM for formal investigation in which you will be charged with the violation of Rule 810 of the Rules and

744

Regulations of the Transportation Department, for being absent from duty since July 30th, 1945, without permission and failure to report for duty as instructed.

"You are entitled to representation in accordance with the Brotherhood of Railroad Trainmen's Agreement, and to bring to the investigation such witnesses as you may desire."

This notice was personally received by plaintiff on or about January 2, 1946, but plaintiff nevertheless failed to attend the investigation, arrange for representation or witnesses thereat, or to make any request upon defendant for postponement thereof. No response whatever was made by plaintiff to said letter.

9. The investigation referred to in Finding 8 was held at 10:00 A.M. at Dunsmuir, California, on January 14, 1946, in plaintiff's absence. The proceedings which took place at said investigation are correctly set forth in defendant's Exhibit B in evidence and are referred to and incorporated herein by reference.

10. Following said investigation plaintiff was dismissed from his employment by defendant, and was notified of such dismissal by letter dated and mailed January 23, 1946, which was personally received by plaintiff on or about January 28, 1946. The Provisions of such letter of dismissal are set forth in defendant's Exhibit A in evidence, and are referred to and incorporated herein by reference.

11. Plaintiff did not present his grievance, or any grievance or claim arising by reason of his said dismissal, to defendant in writing or through his local committee within sixty days next succeeding his said dismissal on January 23, 1946, as required and contemplated by Section (c) of Article 58 of the Agreement between defendant and the Brotherhood of Railroad Trainmen referred to in Finding 4 above, and the Agreed-to Interpretation referred to in Finding 5 above, which are incorporated by reference herein. By letter of March 6, 1947, plaintiff for the first time in writing presented to defendant's Superintendent a request for reinstatement as an employee, which request was denied by said Superintendent by letter of March 12, 1947. The said letter of March 6, 1947, is correctly set forth in plaintiff's Exhibit No. 3 and the said letter of March 12, 1947, is correctly set forth in defendant's Exhibit No. D, both of which letters are referred to and incorporated herein by reference. No appeal was ever taken by plaintiff in writing or otherwise, to the General Manager or any other officer of defendant, from the Superintendent's decision denying plaintiff's request for reinstatement, as set forth in said letter of March 12, 1947, last mentioned.

12. On or about November 15, 1947, plaintiff filed an action in this Court, numbered 27814, against this defendant as defendant therein, seeking damages from defendant on account of injuries sustained in his fall from a car on July 28, 1945, which he alleged on information and belief to be permanent in character. Said suit was compromised and settled on January 5, 1948, by payment to the plaintiff of the sum of $17,500.

Conclusions of Law

1. This Court has jurisdiction of the subject matter and the parties to this action.

2. In the absence of an applicable statutory provision or an enforceable contract, an employment for an indefinite time is terminable at the will of the employer, with or without cause. Plaintiff's right to be discharged only after a formal investigation existed solely by virtue of the collective bargaining agreement between the defendant and the craft of employees represented by the B. R. T., and was measured by the provisions of such agreement, which provisions must be considered together. The B. R. T. being, pursuant to the provisions of the Railway Labor Act, the collective bargaining representative of the craft or class of defendant's employees of which plaintiff was a member, plaintiff's employment was subject to all of the provisions of such collective bargaining agreement, and the amendments and modifications thereof, whether known to plaintiff or not, and could be on no other terms.

3. Prior to and in connection with the dismissal of plaintiff from his employment on January 23, 1946, and thereafter defend-

ant complied with each, every and all of the applicable provisions of said collective bargaining agreement, and particularly with Article 57 thereof.

4. Compliance by plaintiff with the provisions of Article 58 (as modified by the Agreed-to Interpretation) of the applicable collective bargaining agreement was a condition precedent to the assertion by him of any claim or grievance arising from his dismissal on January 23, 1946, or from the proceedings leading thereto. Plaintiff having failed to comply with such provisions is barred from asserting any such grievance, i. e., claim that he was discharged in violation of the terms of the collective bargaining agreement; and any and all rights or claims which he may have had as a result of such dismissal expired and ceased to exist when he failed to comply with such provisions. Plaintiff's grievance was not presented within the time therein provided.

5. Plaintiff had already been compensated in the settlement of the case of Wallace v. Southern Pacific Co.[2] in this Court, No. 27184, in which case he sought damages from this defendant, including the loss of future earnings herein sought to be recovered, on account of injuries which he alleged in the former case to be permanent in character.

6. Defendant is entitled to judgment in its favor and against plaintiff, with costs.

Appendix

Excerpt from Collective Agreement between Southern Pacific Company (Pacific Lines) and Brotherhood of Railroad Trainmen providing rates of pay, rules and working conditions for trainmen (Effective December 16, 1939)

Article 57.

Discipline—Investigations.

*Section (a).* When a trainman believes he has been unjustly treated, he shall have the right to present his case in writing, or through his Local Committee, to the Superintendent, with such evidence as he may have to offer. It will be the duty of the Superintendent to investigate the matter and render his decision in writing, without unnecessary delay. Should such decision be unsatisfactory it may on written notice to the Superintendent, be appealed to General Manager or his delegated representative. General Chairman of the Brotherhood of Railroad Trainmen will be furnished copy of decision rendered on appeal.

*Section (b).* No employee covered by this agreement will be disciplined or discharged without a fair and impartial formal investigation before a proper officer of the Company. At such investigation he will be entitled to be represented by the Local Chairman of his Organization, or by an employe of his choosing in the same grade of service on the employe's seniority district. Nothing herein restricts suspension in proper cases pending investigation, which shall be prompt, ordinarily within five (5) days.

*Section (c).* When a formal investigation is to be held the employe shall be given written notice as to the specific charge, time and place, sufficiently in advance to afford him the opportunity to arrange representation and for the attendance of any desired witnesses. A telegram will be considered written notice. The Company will require the presence of all employes whose testimony may be necessary to develop all of the essential facts. In fixing time at which investigation will be held due consideration will be given to the need of rest by employes.

*Section (d).* Interrogations will be made by the presiding officer of the Company who is holding the investigation. After he has completed the direct examination, other Company officers present may interrogate the witness. The accused and/or his representative shall be confronted with all of the evidence, may hear the testimony of all witnesses and shall be privileged to question any or all who may so testify. Each witness may, after testifying, remain present until the investigation is concluded. All questions and answers that constitute a part of the investigation shall be included in the transcript, also should the employe or his representative make verbal protest in regard to any question that he may con-

2. No opinion for publication.

sider unfair or ambiguous, such protest will be included in the record.

*Section (e)*. Any disciplinary action taken by the Company shall be based upon the evidence adduced at the investigation, and employe or his representative notified of decision without undue delay; not exceeding thirty (30) days.

*Section (f)*. Where discharge (or suspension) is found to have been unjust, the employe shall be returned to service and paid for wage loss.

*Section (g)*. Should one or more employes involved not be available on account of sickness or injury, the investigation will be conducted with those who are available, and decision rendered as provided for in this Article. When the physical condition of those sick or injured will permit, investigation will be reconvened; those previously attending will be notified and will attend and participate should they, or either party to the investigation, desire their presence.

*Section (h)*. Trainmen taken from their runs for investigation if found innocent, or if required only as witnesses, shall be paid for all time lost, and when called as witnesses or for depositions and stenographic statements and lose no time, shall be compensated at one-eighth of the daily rate of last service performed from time required to report until time released, with a minimum of one (1) hour.

*Section (i)*. When employes make written or typewritten statements at the request of the Superintendent or his representative, if such statements do not include questions asked by the Superintendent, or his representative, and answers made by the employe, it will not constitute an investigation under this Article, but if such statements do include questions and answers as herein described, it will constitute an investigation and be subject to the provisions of this Article.

It will not be permissible for clerks to conduct investigations; however, clerks may interview employes and take their statements in connection with irregularities which may or may not later require an investigation. Interviews and statements taken by Police Department will be confined to matters coming within the authority of Company Police Department.

*Section (j)*. Trainmen will not be required to sign waiver of investigation.

*Section (k)*. Should Chairman of Local Committee request a transcript of the testimony in any investigation that has been made it will be furnished; Local Chairman will also be furnished copy of any additional statements or evidence which may be used against the accused in assessing discipline.

## Article 58.
### Limitation in Presenting Grievances.

*Section (a)*. The General Committee of the Brotherhood of Railroad Trainmen will represent all trainmen in the making of contracts, rates, rules, working agreement, and interpretations thereof.

*Section (b)*. The right of any employe desiring representation in the handling of his grievances or complaints by the Brotherhood of Railroad Trainmen under the recognized interpretation of the Agreement involved is conceded.

*Section (c)*. Any trainman having a grievance shall present the same in writing or through his Local Committee, to his Superintendent, within sixty (60) days after the occurrence, and should he not be satisfied with the decision of the Superintendent and desires to appeal, he may, within thirty (30) days, thereafter, notify the Superintendent, in writing or through his Local Committee, that he desires to appeal the case. The Superintendent will thereupon submit all papers in the case, together with any statement the man desires to make, to the Assistant General Manager or other proper officer; General Chairman, B. of R. T. will be furnished copy of decision rendered.

*Section (d)*. No grievance will be considered unless presented in accordance with Section (b) of this Article.

*Section (e)*. Trainmen who are dismissed may be re-employed at any time; but will not be reinstated unless case is pending in accordance with provisions of Section (b) of this Article.

Agreed-to Interpretation, Article 58, Section (c), Trainmen's Agreement, effec-

tive December 16, 1939, Southern Pacific Company (Pacific Lines)

(1) Time claims not submitted within 60 days of the date of occurrence will be deemed abandoned.

(2) When time claims made within 60 days of the date of occurrence are declined, the employe affected, or his authorized representative, shall have 60 days from the date of notice declining claim to present a written grievance covering the claim to the Superintendent. If grievance is not filed within such 60-day limit, all rights shall expire.

(3) If grievance is filed within the 60-day limit, as provided in Item (2), and the claim is again declined, the employe, or his representative, shall have 30 days from the date of the decision of the Superintendent to advise the Superintendent in writing of intention to appeal to higher officer. If such notice of appeal in writing is not given the Superintendent within such 30-day limit, all right to handle the case further shall cease, and all rights based on the claim shall expire.

(4) The above time limitations embodied in Items (2) and (3) shall also apply to disciplinary cases.

This interpretation, jointly made by parties signatory hereto, shall be in effect from April 1st, 1941.