**WOODWARD IRON COMPANY,**
Appellant,

v.

**Anderson L. WARE and Lawrence Goodson, Appellees.**

No. 17334.

United States Court of Appeals
Fifth Circuit.

Nov. 19, 1958.

B. J. Dryer, Woodward, Ala., for appellant.

R. L. Jones, W. E. Brobston, Lipscomb, Brobston, Jones & Brobston, Bessemer, Ala., for appellees.

Before RIVES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This case concerns the right of individual employees to maintain an action for damages against their employer for breach of a collective bargaining agreement.

Woodward Iron Company, appellant, has a collective bargaining agreement with District Fifty, United Mine Workers of America, Local Union Number 2019, covering production and maintenance workers at its coke plant in Woodward, Alabama. Woodward discharged

Anderson Ware and Lawrence Goodson, appellees, July 3, 1957, on the ground that the two men fomented a wildcat sit-down strike. They were replaced in their jobs as jamb cleaners by employees having less seniority. Ware and Goodson said that they had nothing to do with the strike; had not fomented it, had not participated in it, had tried to persuade the strikers to return to work. They filed suit against Woodward for breach of contract. Each alleged that his employment as a production and maintenance worker was subject to the terms of the collective agreement giving him certain benefits, such as seniority rights, and protecting him for three years from discharge without just cause. Each claimed damages in the amount of $10,-000. The suits were filed in the Circuit Court for Jefferson County, Alabama, removed to the federal court on the ground of diversity of citizenship, and consolidated. The jury gave a verdict of $1,845.40 in favor of Ware and $1,-313.76 in favor of Goodson.

The appeal presents three questions:

(1) The standing of two individual members of a contracting union to maintain an action to enforce, as to them, rights derived from a labor agreement between their union and their employer;

(2) The right of an individual employee to resort to the courts without first exhausting grievance-arbitration procedures;

(3) The question whether the evidence adds up to a case for the jury on the factual issue of wrongful discharge from employment.

We decide these questions in favor of Ware and Goodson, appellees.

I.

■ An ordinary contract of employment is for an indefinite time. Ware and Goodson did not have an ordinary employment contract. Into their contract must be read the terms of the three year collective bargaining agreement between their employer and the union of which they were members.[1] Paragraph 15 of Article 4 of that agreement provides: "Seniority rights of employees will terminate * * * [if] employees [are] discharged for just and sufficient reasons". We agree with the trial judge in his charge to the jury: "[A] court would have to say that there was an agreement to employ all of the people for whose benefit this collective bargaining agreement was made as long as their seniority status would entitle them to the work that was to be done." The plaintiffs' rights asserted in this case are derived therefore from the collective bargaining agreement.

■ Contrary to appellant's contention, there is not much doubt as to the standing of an individual employee to sue his employer on a collective contract.[2]

1. "The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment. Without pushing the analogy too far, the agreement may be likened to the tariffs established by a carrier, to standard provisions prescribed by supervising authorities for insurance policies, or to utility schedules of rates and rules for service, which do not of themselves establish any relationships but which do govern the terms of the shipper or insurer or customer relationship whenever and with whomever it may be established. * * *" J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 64 S.Ct. 576, 579, 88 L.Ed. 762.

2. The cases are collected in Annotation, 18 A.L.R.2d 312 (1951). See also Petro, Labor Policy of the Free Society (N.Y. 1957), p. 228; Cox, Rights under a Labor Agreement, 69 Harv.L.Rev. 601 (1956); Report of Committee on Improvement of Union-Management Agreements on Individual Grievances, 50 N.W.L.Rev. 143 (1955); Adner, Ability of an Individual Employee to sue his Employer on a Collective Agreement, 3 Buff.L.Rev. 270 (1954); Lenhoff, The Present Status of Collective Agreements in the American Legal System, 39 Mich.L.Rev. 1109 (1941).

Tennessee Coal, Iron & R. Co. v. Sizemore, 1952, 258 Ala. 344, 62 So.2d 459; Augustus v. Republic Steel Corp., 5 Cir., 1952, 200 F.2d 334. Most cases rest their holding on the principle that a collective bargaining agreement is a contract for the benefit of a third person. "[H]owever engaged, an employee becomes entitled by virtue of the Labor Relations Act somewhat as a third party beneficiary to all benefits of the collective agreement, even if on his own he would yield to less favorable terms. The individual hiring contract is subsidiary to the terms of the trade agreement." J. I. Case Co. v. National Labor Relations Board, 1944, 321 U.S. 332, 334, 64 S.Ct. 576, 579, 88 L.Ed. 762. "Contract for the benefit of a third person" may be too tidy a phrase to apply to the complicated employer-union-employee relationship; a collective agreement may be assimilable to a legislative enactment. Whatever the rationale, most courts will allow an individual employee to sue his employer to enforce rights personal to the employee derived from a collective contract.

Lincoln Mills is no impediment to the plaintiffs' suit. As the concurring opinion points out: "The District Court [in Lincoln Mills] had jurisdiction over the action since it involved an obligation running to a union—a union controversy —and not uniquely personal rights of the employee sought to be enforced by the union." Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 919, 1 L.Ed.2d 972. "To hold that the union may sue, it is not necessary to hold that employee may not sue in any forum, and vice versa. * * * When the employee and the union are in disagreement, the question is not which may sue, but rather the extent to which the one may conclude the other." Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 500, 99 L.Ed. 510.

Ware and Goodson have standing in court to sue their employer for damages for unlawful discharge. This right is personal to them and exists irrespective of the union's suable status and interest in prosecuting employee claims under collective agreements.

## II.

Ware and Goodson were discharged for the same reason, fomenting a strike. They worked together. They committed the same acts which brought about their dismissal. Woodward argues that Goodson, but not Ware, is barred from suing because of his failure to exhaust the remedy afforded by the grievance procedure.

The collective contract establishes a procedure for settlement of disputes when an employee challenges his suspension or discharge. The procedure allows five days for an aggrieved employee to register his complaint with the foreman. If the employee and the union are unable to settle the dispute with the employer, the grievance goes to arbitration.

Ware filed a complaint within five days. A union meeting was held. "One man got up and made a motion that the whole thing was a lie, just to drop it." The union voted to drop it. "They didn't even read it [the complaint] off in the meeting for discussion." Goodson did not file a complaint. It would have been futile, if he had.

Grievance procedure is appropriate if an aggrieved employee challenges his suspension or discharge with the hope of reinstatement and continuance of his former employment status. In a suit for specific performance, reinstatement, protection of seniority rights, cases in which the employment relationship has not terminated, primary resort to grievance procedures is logical and proper and should be a prerequisite to an employee filing suit. But a discharged employee may have a common law right of action for damages for breach of contract. He does not lose this right if he elects to use the courts instead of employer-union arbitration channels. "The grievance referred to in the contract does not apply so as to prevent an employee

from suing to recover damages for which the defendant is liable to him by reason of a breach of the contract for his direct benefit. There is no obligation on the part of the plaintiff to bring a grievance on account of a breach of the contract, which is complete, resulting in damage to the plaintiff." Tennessee Coal, Iron & R. Co. v. Sizemore, 1952, 258 Ala. 344, 62 So.2d 459, 465.[3]

Here, the employer discharged Ware and Goodson, terminating their relations with the company. The union refused to process their grievance, showing no interest in the case from the standpoint of the union's future relations with the company under the collective contract. The two men themselves recognized the action as final and accepted the consequences. Resort to grievance procedures makes sense when arbitration of an employee's claim affects an aggrieved employee's continuing relations with his employer or if it affects other employees or if it affects union-company relations and future bargaining. But there is no point to resorting to arbitration on the facts in this case.

Even under the Railway Labor Act, 45 U.S.C.A. § 51 et seq., an employee need not exhaust the statutory arbitration remedy in a suit for damages for wrongful discharge.[4] Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089.

In United Protective Workers of America v. Ford Motor Co., 7 Cir., 1952, 194 F.2d 997, 1002, it was clear from the evidence that the employer had reached a firm decision that it was not a breach of contract to discharge an employee as part of a plan to retire all employees on reaching the age of seventy-five. The Court held that it would be useless to require an employee suing for damages to exhaust grievance procedures. It is equally clear in this case that the employer has decided beyond reconsideration that Ware and Goodson were discharged for just cause. Worse, the union agrees with the employer. If Goodson had filed a complaint, his grievance would have been processed—if processed—by representatives of a hostile union in agreement with the employer. The courts should be open to an individual employee to assert a common law action for damages when his alternative is to resort to grievance proceedings before arbiters already combined against him.

### III.

The trial judge charged the jury fairly on the issues. The principal issue of fact was whether either of the plaintiffs incited the unauthorized strike or encouraged it in any way. The jury found for the plaintiffs. There is ample evidence to support the verdict.

The judgment is

Affirmed.

---

3. Alabama looks with disfavor upon contracts to arbitrate. "But a contract to arbitrate and thus determine whether plaintiff has a cause of action is not ordinarily enforceable * * *" Tennessee Coal, Iron & R. Co. v. Sizemore, 1952, 258 Ala. 344, 62 So.2d 459, 465.

4. In Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 580, 94 L.Ed. 795, the Court pointed out the distinction we are making:
"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Moore was discharged by

the railroad. He could have challenged the validity of his discharge before the [arbitration] Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees."