158 So.2d 487

**REPUBLIC STEEL CORPORATION**

v.

**Charlie MADDOX.**

6 Div. 736.

Court of Appeals of Alabama.

Dec. 13, 1960

Rehearing Denied Jan. 24, 1961.

Burr, McKamy, Moore & Thomas, Samuel H. Burr and Jas. R. Forman, Jr., Birmingham, for appellant.

Brobston, Jones & Brobston, Bessemer, for appellee.

PRICE, Judge.

This appeal is taken by appellant from a judgment rendered by the circuit court of Jefferson County in favor of the appellee, plaintiff below.

Plaintiff filed suit to recover severance pay alleged to be due under a collective bargaining agreement entered into by defendant and the labor union of which plaintiff was a member. The agreement provided:

> "When, in the sole judgment of the company, it decides to close permanently a department of a mine or plant, or substantial portion thereof and terminate the employment of individuals, an employee whose employment is terminated either directly as a result thereof because he was not entitled to other employment with the Company under the provisions of Section 9 of this agreement—Seniority and subsection C of this Section 14, shall be entitled to a severance allowance in accordance with and subject to the provisions hereinafter set forth in this Section 14."

The case was tried by the court without a jury on stipulated facts. For the purposes of this suit, the effect of the stipulation and the defendant's interpretation thereof in brief was that the termination of plaintiff's employment resulted from a permanent closing of one of defendant's facilities within the meaning of the contract. It was further stipulated that neither the plaintiff, on his own behalf, nor his union for him, had at any time attempted to process the matters and things complained of in his complaint through the grievance—arbitration procedures set out in the contract.

It is further stipulated that "the defendant was engaged in the production of goods for movement in interstate commerce and was and is an industry affecting commerce within the meaning of the Labor Management Relations Act and other laws passed by the Congress of the United States for the regulation of interstate commerce * * and that the plaintiff as an iron ore miner employed by the defendant * * * was engaged in the production of goods for movement in interstate commerce."

The several assignments of error relate to various rulings of the trial court to the effect that plaintiff was not required to exhaust the administrative remedies or grievance procedures provided for in the collective bargaining agreement before bringing suit for severance pay.

The question of plaintiff's right to resort to the courts without first complying with the grievance procedures outlined in the contract has been decided adversely to appellant's contention by our Supreme Court in the recent case of Woodward Iron Co. v. Stringfellow, 271 Ala. 596, 126 So.2d 96. See also Tennessee Coal, Iron & R. Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459.

The appellant contends here that the United States Supreme Court, in Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, has rejected the rule enunciated in the Sizemore case, supra, with respect to collective bargaining contracts between a labor union and an employer engaged in interstate commerce and subject to the Labor Management Relations Act. We find no merit in this contention.

In the Lincoln Mills case the court held that the federal district court had the right to decree specific performance of an agreement to arbitrate a grievance dispute as between the union and the company, under the Labor Management Act of 1947.

One of the questions before the United States Court of Appeals, Fifth Circuit, in Woodward Iron Co. v. Ware, 261 F.2d 138, 141, was whether former employees, as

union members, had standing in court to sue their former employer under a collective bargaining agreement between the union and the employer. The court held that such right was personal to the employees "and exists irrespective of the union's suable status and interest in prosecuting employee claims under collective agreements." The court said:

"Lincoln Mills is no impediment to the plaintiffs' suit. As the concurring opinion points out: 'The District Court (in Lincoln Mills) had jurisdiction over the action since it involved an obligation running to a union—a union controversy—and not uniquely personal rights of the employee sought to be enforced by the union.' Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 919, 1 L.Ed.2d 972. 'To hold that the union may sue, it is not necessary to hold that employee may not sue in any forum, and vice versa. * * * when the employee and the union are in disagreement, the question is not which may sue, but rather the extent to which the one may conclude the other.' Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 500, 99 L.Ed. 510."

In the Ware case, supra, the court quoted with express approval from the Sizemore case, and held:

"Grievance procedure is appropriate if an aggrieved employee challenges his suspension or discharge with the hope of reinstatement and continuance of his former employment status. In a suit for specific performance, reinstatement, protection of seniority rights, cases in which the employment relationship has not terminated, primary resort to grievance procedures is logical and proper and should be a prerequisite to an employee filing suit. But a discharged employee may have a common law right of action for damages for breach of contract. He does not lose this right if he elects to use the courts instead of employer—union arbitration channels."

We hold that the trial court's action in rendering judgment for plaintiff was proper, under the facts stipulated.

Since, as contended by appellant, "the fundamental question common to all the assignments of error in this case is the necessity or not of the plaintiff to resort to the procedures set out in the contract sued on for the. adjustment of grievances before seeking relief in the law courts," we see no necessity for a discussion of the assignments by which appellant sought by various procedural methods to present this proposition.

The judgment is affirmed.

Affirmed.

CATES, Judge (concurring specially).

Were this only to decide what the law is or what the law ought to be, I think it is readily apparent that Judge Price is right.

After reading Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510; Textile Workers Union of America, v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, I cannot be confident of the end decision in this admittedly test case.

An intermediate appellate court such as ours often finds itself suspended not only by the alternatives of what the law is as against what the law ought to be but also by a tertium quid: what will be the law? We are members of a court controlled mainly by the decisions and superintendence of the Supreme Court of Alabama. Code 1940, T. 13, § 95.

However, I am not persuaded, nor am I aware of any case holding, that § 95, supra, has any operation where we are confronted by a case falling under and necessarily controlled by the supremacy clause of the Constitution of the United States. Art. 6, cl. 2.

Thus, from the pre-emptive effect of the Lincoln Mills case upon substantive law, where we lay hold of a collective bargaining agreement under the Wagner or Taft-Hartley Acts, we are loosed from state court decisions. But we are not there given any source of law even as ascertainable as that general Mansfieldian commercial law referred to by Mr. Justice Story in Swift v. Tyson, 16 Pet. 1, 19, 10 L.Ed. 865. For we find Mr. Justice Douglas saying of the remedy-derived-right under § 301(a) of the Taft-Hartley Act (29 U.S.C.A. § 185):

" * * * The range of judicial inventiveness will be determined by the nature of the problem. * * * Federal interpretation of the federal law will govern, not state law. * * * But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. * * * Any state law applied, however, will be absorbed as federal law and *will not be an independent source of private rights.*" (Italics added.) Lincoln Mills, supra, 353 U.S. at page 457, 77 S.Ct. at page 918.

This point of view was of a 5–3 court, but we find no later recanting.

Even in Woodward Iron Co. v. Ware, 5 Cir., 261 F.2d 138, 141, I fail to find the the "uniquely personal rights of the employee" under a collective bargaining agreement (Westinghouse case, supra) to have been ajudicated under Alabama law as an ordinary diversity of citizenship action would have been. Indeed the author of the note in 43 Cornell L.Q. 503, 507, implies this is an imprecation for a visitation from the brooding Omnipresence.

In Springer v. Powder Power Tool Corp., Or., 348 P.2d 1112, 1114, an action for back-pay accruing to three former employees under a retroactive collective bargaining agreement, the validity of Mr. Justice Douglas's formulation in Lincoln Mills seems to be accepted as valid—at least arguendo:

"In the following cases it has been recognized that under the doctrine of Lincoln Mills federal law must be applied. See Karcz v. Luther Manufacturing Co., 1959, 338 Mass. 313, 155 N.E.2d 441; McCarroll v. Los Angeles County, etc., Carpenters, supra; Tool & Die Makers Lodge No. 78 Int. Ass'n of Mach. v. General Electric Co., D.C. E.D.Wis., 170 F.Supp. 945 and Ingraham Co. v. Local 260, Int. Union of E. R. & M. Workers, D.C.Conn., 171 F. Supp. 103, 107."

The Springer opinion also marshals a list of opinions to the effect that § 301(a), by using "may" as to federal courts confers concurrent jurisdiction on state courts. E. g., Bridges v. F. H. McGraw & Co., Ky., 302 S.W.2d 109; contra comment, 30 Rocky Mtn.L.Rev. 62, 70. Unlike Pilate, we may not wash our hands and send this business to another forum. Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967.

All of this discussion could have been closed easily by concluding that under either state or federal views the law was the same. This was done by Judge Wyzanski in Textile Workers Union of America (CIO) v. American Thread Co., D.C., 113 F.Supp. 137, by Mr. Justice Traynor in McCarroll v. Los Angeles County District Council of Carpenters, 49 Cal.2d 45, 315 P.2d 322, by Mr. Justice Cutter in Karcz v. Luther Mfg. Co., 338 Mass. 313, 155 N.E.2d 441, and by McAllister, C. J., in Springer, supra. For I take the Ware case to express the principles of law which our State courts would apply.

However, in United Steelworkers of America v. American Mfg. Co., supra, Mr. Justice Douglas disapproves International Ass'n of Machinists, etc. v. Cutler-Hammer, Inc., 271 App.Div. 917, 67 N.Y.S.2d 317,

affirmed 297 N.Y. 519, 74 N.E.2d 464. The dissenting opinion in the Court of Appeals by Fuld, J., says in part:

"A claim may be 'so unconsionable or a defense so frivolous' as to justify the court in refusing to order the parties to proceed to arbitration * * * but I do not so regard the claim here asserted. I have difficulty in concluding, as respondent urges, that reasonable men cannot differ as to the meaning of the provision in question. While I see that as a possible construction, I do not consider it the only one. It may well be argued, and in good faith, that in the light of surrounding circumstances and of experience in the industry, and, indeed, in this very business, respondent company agreed that a bonus would be paid—at least where the company's business warranted—and that it would discuss with the employees the amount of payment, i. e., 'payment of a bonus'.

\* \* \* \* \* \*

"In short, I think that there is something to arbitrate, and the order should be reversed."

Does this presage a new field of pre-emption by private agreement closing out all courts, state and federal, even in that last sacrosanct area the construction of contracts?

From United Steelworkers of America v. American Mfg. Co., we excerpt [363 U.S. 564, 80 S.Ct. 1346]:

"\* \* \* The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is then confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

"The courts therefore have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those the court will deem meritorious. The processing of even frivolous claims may have therapeutic values which those who are not a part of the plant environment may be quite unaware."

However, even if the American Mfg. Co. principle were stretched to this situation, the stipulation here would have left no substantive question for an arbitrator to ponder upon.

On Rehearing

At appellant's request we extend our opinion to show the full terms of the stipulation concerning the closing of appellant's mine or a substantial part thereof:

"4. It is agreed and stipulated by and between the parties that on December 16, 1953, defendant effected a reduction in the work force at the time or plant where plaintiff was employed by the defendant which resulted in the lay-off of the plaintiff from active employment and that a dispute has existed between the parties to this suit as to whether such reduction in the work force was the result of a permanent closing of a plant, or department of a mine or plant or substantial portion thereof and caused a termination of plaintiff's employment within the meaning of said Section 14 of said contract.

"5. It is agreed and stipulated that from all the circumstances surrounding said reduction in work force at defendant's said mine, a trier of fact could reasonably find that on said date there occurred a closing of defendant's mine or substantial portion thereof and a

## 200

termination of the plaintiff's employment within the meaning of said Section 14 of the contract sued on or said trier of fact could reasonably find to the contrary but, nevertheless, it is agreed and stipulated for the purposes of this suit alone and without prejudice to the defendant in any other suit of like kind or character which may now be pending or which may hereafter be filed against the defendant, that the trial court herein may find that there was such closing and such termination."

Application overruled.